

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KEVIN WHITE,

    Plaintiff,

v.                                                 CIVIL ACTION NO. 2:21-cv-113

GULF HARBOUR INVESTMENTS
CORP., ET. AL.,

    Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants Gulf Harbour Investments Corp. ("Gulf Harbour") and Specialized Loan Servicing, LLC's ("SLS") (collectively "Defendants") joint Motion to Dismiss Counts I and III of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 16. Plaintiff filed a Memorandum in Opposition on April 28, 2021. ECF No. 22. Defendants did not file a reply. Upon review of the filings, the Court finds that a hearing is not necessary, and this matter is ripe for judicial determination.

    **I.**     **FACTUAL AND PROCEDURAL HISTORY**

The following consists of factual occurrences relevant to Defendants' Motion to Dismiss. These facts, taken from Plaintiff Kevin White's ("Plaintiff") Amended Complaint (the "Complaint"), are considered true and cast in the light most favorable to Plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

On or about November 15, 2005, Plaintiff purchased the property located at 3825 Larchwood Drive in the City of Virginia Beach, Virginia 23456 (the "Property") for $395,000.00. *Amended Complaint*, ECF No. 12 at ¶¶ 3, 9. At the time of purchase, Plaintiff acquired a purchase money mortgage from Wachovia Bank, N.A. (the "Wachovia mortgage") in the amount of $316,000.00. *Id.* On or about March 21, 2006, Plaintiff acquired a second mortgage from E-Loan,

1

Inc. (the "E-Loan Mortgage") in the amount of $73,500.00. *Id.* at ¶ 10. The E-Loan Mortgage was junior to the Wachovia mortgage. *Id.* at ¶12. Additionally, the E-Loan Mortgage was recorded by a promissory note and secured by a deed of trust (the "E-Loan DOT"). *Id.* at ¶10.

On or about April 5, 2013, Plaintiff refinanced the Wachovia mortgage with Wells Fargo Bank, N.A. ("Wells Fargo") for $298,600.00 (the "Wells Fargo Refinance"). *Id.* at ¶18. Based upon representations made Wells Fargo representatives, Plaintiff believed that both the Wachovia mortgage and the E-Loan Mortgage were refinanced with Wells Fargo. *Id.* at ¶ 15. As it turns out, Wells Fargo did not include the E-Loan Mortgage in the Wells Fargo Refinance. *Id.* at ¶17. After the Wells Fargo Refinance, Plaintiff did not make payments on the E-Loan Mortgage, believing it to have been paid in full. *Id.* at ¶¶18-21.

On or about February 19, 2019, Gulf Harbour became an assignee on the E-Loan Mortgage. *Id.* at ¶¶ 25, 31-34. Gulf Harbour then employed Defendant SLS to handle its mortgage servicing needs. *Id.*

On February 3, 2021, Plaintiff received a "Notice of Foreclosure Sale" letter concerning the E-Loan Mortgage. *Id.* at ¶ 36. Plaintiff alleges this letter was the only notice that Plaintiff received concerning the E-Loan Mortgage since 2013. *Id.* A foreclosure sale of the Property was scheduled for February 23, 2021 to enforce the purported rights of Gulf Harbour under the E-Loan Mortgage. *Id.* at ¶ 20; *see also* ECF Nos. 12-3 and 12-4. The foreclosure sale was ultimately cancelled after Plaintiff obtained a temporary injunction in Virginia Beach Circuit Court. *Id.*

The E-Loan DOT[1] contained a "Balloon Rider to Security Instrument" ("Rider"). *Id.* at ¶ 26. The Rider required that Plaintiff make a balloon payment for the entire principal balance of the loan, plus the unpaid interest, by April 1, 2021. *Id.* The Rider further required "[a]t least (90)

---

[1] The E-Loan DOT was later assigned to Defendant Gulf Harbour. Am. Compl. ¶ 34.

2

but no more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice prior to the Maturity Date" and "the amount of the Balloon Payment." *Id.* at ¶ 27; *see also* ECF No. 12-1. Plaintiff alleges that he received no such notice despite the Rider specifically requiring it. *Id.* at ¶ 28.

Plaintiff furthers that under the Fair Debt Collection Practices Act (the "FDCPA")—codified at 12 U.S.C. § 2605(b)(1)—Gulf Harbour, acting as a debt collector, was required to provide Plaintiff with a debt validation notice for the E-Loan Mortgage. *Id.* at ¶ 32-38. Plaintiff alleges that he received no such notice despite the FDCPA's specific requirement. *Id.* at ¶ 35.

As a result of Defendants' alleged conduct, Plaintiff asserts breach of contract against Defendants Gulf Harbour and SLS (Count I), violations of the Truth in Lending Act against Defendant SLS (Count II), violations of the FDCPA against Defendant Gulf Harbour (Count III), and negligence against Wells Fargo (Count IV).

Plaintiff seeks current damages to include, among other items, attorneys' fees, $86,000 to satisfy the E-Loan Mortgage, and damages for humiliation, loss of sleep, anxiety, and other severe emotion distress. *Id.* at ¶ 39. Additionally, Plaintiff seeks future damages to include potential actual and emotional damages incurred from loss of the property should foreclosure move forward. *Id.* at ¶ 40.

On February 22, 2021, Plaintiff initially filed the present action in the Circuit Court for the City of Virginia Beach against BWW Law Group, LLC, Equity Trustees, LLC, Gulf Harbour, SLS, and Wells Fargo. ECF No. 1. A Notice of Removal was later filed in this Court on February 26, 2021. *Id.* On March 31, 2021, Plaintiff filed an Amended Complaint which included each defendant from the state court action. ECF No. 12. Plaintiff later voluntarily dismissed his claims against BWW Law Group, LLC and Equity Trustees, LLC on May 10, 2021. ECF No. 30.

Defendants Gulf Harbour and SLS filed the present joint Motion to Dismiss Counts I and III of the Amended Complaint on April 13, 2021. ECF No. 16. Plaintiff filed a Memorandum in Opposition on April 28, 2021. ECF No. 22. Defendants did not file a reply. This matter ripe for judicial determination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Assessing a plaintiff's claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

## III. DISCUSSION

In its analysis, the Court will assess Defendants' arguments in favor of dismissal for both Counts I and III of the Amended Complaint. As previously indicated, Count I alleges breach of contract against Defendants Gulf Harbour and SLS while Count III alleges violations of the FDCPA against Gulf Harbour only.

### a. Count I states a plausible claim for relief.

Beginning with Count I, Plaintiff alleges a straightforward breach of contract claim under Virginia common law. To state a claim for breach of contract, a plaintiff must show: (1) a legally enforceable contract between plaintiff and defendant; (2) that the defendant violated or breached certain terms of the contract; and (3) injury or harm to the plaintiff resulted from defendant's breach. *Navar, Inc.*, 291 Va. 338, 344 (2016).

At the outset, a legally enforceable contract requires an offer, acceptance, and valuable consideration. *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980). Here, the contract at issue is the E-Loan DOT. The parties do not disagree as to the validity of the E-Loan DOT and, therefore, the Court will assume a valid contract exists. Indeed, Defendants rely upon the E-Loan DOT to assert a right to foreclosure while Plaintiff relies upon it to make his breach of contact claim for Defendants' alleged failure to issue contractually required notice. Additionally, a review of the contract demonstrates that the E-Loan DOT was properly assignable, binding all successors in interest to the obligations therein. ECF No. 12-1 at 3. As the Amended Complaint alleges, the E-Loan DOT was later assigned to Defendant Gulf Harbour, thereby requiring Defendant Gulf Harbour (and its agents[2]) to abide by its terms.

---

[2] The Amended Complaint alleges that Defendant SLS acted on behalf of Defendant Gulf Harbour as its agent in the foreclosure process. *See* ECF No. 12 at 5.

5

Since a valid contract exists, the Court must next assess whether Plaintiff plausibly states a claim for breach of said contract. Attached to the E-Loan DOT is the Rider which states "[a]t least ninety (90) but no more than one hundred twenty (120) days prior to the Maturity Date.... Lender must send Borrower a notice prior to the Maturity Date and the amount of the 'Balloon Payment' which will be due on the Maturity Date." ECF No. 12-1 at 6. Under these terms, the lender—Defendant Gulf Harbour— had a contractually-required notice requirement prior to termination of the loan payment period (i.e. the "Maturity Date"). Upon review of the parties' filings, whether Defendants issued such notice has not been determined. Accordingly, Plaintiff alleges a plausible claim for breach.

Lastly, Plaintiff must indicate whether he was injured as a result of Defendants' alleged breach. Ordinarily, litigants individually ascertain which damages apply to each count within a filed complaint. Plaintiff, however, created a general list of injuries suffered without specifying which Count applied to each injury. *See* ECF No. 12 at 7-8. A summary of Plaintiff's allged injuries is as follows:

1. Present damages to include –
   a. $86,000 to satisfy the E-Loan Mortgage;
   b. Humiliation, loss of sleep and other emotional damages associated with the Property being publicly advertised in foreclosure and failure to meet the notice requirement; and
   c. Attorneys' fees and other reasonable costs and expenses incurred in pursing relief in court to prevent the sale of the Property.

2. Future damages to include –
   a. Loss of the Property currently valued in the real estate market at no less than $425,000.00 which includes loss of equity in the Property of no less than $176,000.00;
   b. Humiliation, loss of sleep and other emotional damages associated with losing title to the Property and Defendants' failure to meet the notice requirement;
   c. Reasonable costs and expenses incurred having to find alternate living accommodations of Plaintiff and his family; and
   d. Attorneys fees and other reasonable costs and expenses incurred in pursing relief in court to have rescinded any eventual sale of the

6

Property or to prevent eviction from the Property.

*Id.* As evident by the summary, Plaintiff alleges both present and future damages for Defendants' conduct. Because Plaintiff did not specify which damages apply to which Count, the Court will examine each of Plaintiff's purported damages as applied to the breach of contract claim.

Beginning with future damages, "a cause of action for future damages does not accrue until the damages become reasonably ascertainable and, therefore, capable of proof." *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570 (4th Cir. 1976). Here, Plaintiff seeks multiple future damages all flowing from an anticipated foreclosure of the Property. Prior to Defendants' Notice of Removal to this Court, the Virginia Beach Circuit Court halted foreclosure proceedings as a result of Plaintiff's original complaint dated February 22, 2021. ECF No. 1-1; see also ECF No. 12 at 4. Foreclosure was scheduled for the following day on February 23, 2021. *Id.* Since no foreclosure has occurred, Plaintiff will not be able to assert damages flowing from a non-finite injury. *See South Carolina v. United States*, 912 F.3d 720, 726, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))). Accordingly, Plaintiff cannot use anticipated injuries in support of his breach of contract claim.

Turning to Plaintiff's present damages, Plaintiff alleges an injury in the amount of $86,000 – the principle amount owed on the E-Loan Mortgage. This injury, however, is not based upon the alleged breach of contract for failure to follow the notice requirements. Instead, the $86,000 injury flows from Plaintiff's failure to make payments on the E-Loan Mortgage. It makes no difference whether Plaintiff's failure to pay is excusable based upon Wells Fargo's alleged conduct. What matters is that the $86,000 injury is not a consequence of Defendants' alleged breach. Moreover,

7

Plaintiff's alleged emotional damages are generally improper under a breach of contract theory. *See Barnes v. Gorman*, 536 U.S. 181, 187 (2002) (noting that punitive damages "are generally not available for breach of contract"); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 677 (5th Cir. 2020) (citing Restatement (Second) Of Contracts § 353 cmt.a ("Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure.")).

The Court does, however, note that had Defendants provided adequate notice pursuant to the terms of the E-Loan DOT, Plaintiff plausibly could have avoided filing the present action and had sufficient time to resolve the issues in the complaint without judicial interference. Because Plaintiff did not have the required 90-day or 120-day notice, Plaintiff was unaware of the E-Loan Mortgage and the balance owed on that mortgage until Plaintiff received notice of a foreclosure sale for the Property some 20 days before auction. Surely, this lack of notice caused Plaintiff to quickly hire an attorney and incur other costs and expenses as alleged to prevent foreclosure, resulting in injury to Plaintiff. Of the litany of damages Plaintiff asserts, the costs and expenses incurred to halt foreclosure are the only viable damages for Plaintiff's breach of contract claim. Since these damages are applicable and result from Defendants' alleged breach, Plaintiff costs and expenses damages satisfy the third requirement.

Despite there being a valid contract, a breach, and damages, Defendants argue that Plaintiff is not entitled to relief based upon any alleged notice default being immaterial since Plaintiff committed the first material breach by defaulting on his monthly payments. ECF No. 17 at 5-7. This type of argument is a defense to Plaintiff's breach of contract claim which would be improperly adjudicated at this stage in litigation. Without additional discovery, the Court lacks sufficient information to determine whether Plaintiff's monthly payments were excused or excusable. Indeed, assuming the allegations in Amended Complaint to be true, it may be the case

that a third party failed to adequately make a lump sum payment in satisfaction of Plaintiff's mortgage obligations. Accordingly, Defendants' Motion to Dismiss Count I is denied.

### b. Count III also states a plausible claim for relief.

Defendant Gulf Harbour argues that Count III of the Amended Complaint also fails as a matter of law for two reasons. First, Gulf Harbour claims that it is a creditor and not a debt collector under the FDCPA, making Plaintiff's FDCPA accusations inapplicable to Gulf Harbour. ECF No. 17 at 9. Second, even if Gulf Harbour is a debt collector, Defendants argue that the Deed of Trust does not incorporate the FDCPA and, therefore, does not require that Gulf Harbour issue a FDCPA debt validation notice. *Id.* at 9-10. This is because, according to Defendants, failure to include this FDCPA obligation in the E-Loan DOT somehow renders Plaintiff's FDCPA claims improper as a matter of law. *Id.*

Contrary to Defendants' contentions, Gulf Harbour's status as a creditor remains to be seen. Under 12 CFR 1006.2(g), a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed." Of significance, "[t]he term creditor does not [] include any person to the extent that such person receives an assignment or transfer of a debt in default solely to facilitate collection of the debt for another." *Id.* A debt collector, "includes any person who uses any instrumentality of interstate commerce or mail in any business the principal purpose of which is the enforcement of security interests." 12 CFR 1006.2(i). It is undisputed that Plaintiff defaulted on the E-Loan Mortgage as late as April 2013 when he refinanced with Wells Fargo, believing that the E-Loan Mortgage had been paid in full. *See* ECF No. 12 at 4, 17 at 5-6. At this stage in litigation, it is unclear whether Gulf Harbour may have acquired the loan after default "solely to facilitate collection of the debt." *See* 12 CFR 1006.2(g). If this were the case, Gulf Harbour would be considered a debt collector under 12 CFR 1006.2(g) and (i), making the FDCPA applicable to Gulf Harbour's conduct. Since Gulf Harbour's status as either a creditor or a debt collector is

9

infirm, it is too premature to determine whether the Gulf Harbour maintained obligations under the FDCPA, specifically under the statute at issue—12 U.S.C. §2605(b)(1).

Turning to Defendants' second reason in support of dismissing Count III, Defendants allege that the FDCPA was never incorporated by the E-Loan DOT, making any debt validation notice requirement invalid against Defendant Gulf Harbour. Title 12 U.S.C. §2605(b)(1) elicits a notice requirement, mandating that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person. Pursuant to the statute, in the event Gulf Harbour qualifies as a "servicer of any federally related mortgage loan," Gulf Harbour was obligated to provide notice to Plaintiff. It makes no difference whether the Deed of Trust specifically incorporated the FDCPA generally or the FDCPA's debt validation notice requirement specifically. Accordingly, additional discovery is required to assess the viability of Plaintiff's FDCPA claims.

## IV. CONCLUSION

Based upon the foregoing reasons, Defendants' Motion to Dismiss Count I and Count III of the Amended Complaint is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 7, 2021

/s/
Raymond A. Jackson
United States District Judge